UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

REBECCA ATTILA-FRIED,

      Plaintiff,                                 Case No. _____

 -vs-

KALAMAZOO PUBLIC SCHOOLS and
KALAMAZOO PUBLIC SCHOOLS BOARD
OF EDUCATION,

      Defendants.
_____

Erin Hopper Donahue (P74336)
WHITE SCHNEIDER PC
Attorneys for Plaintiff
1223 Turner Street, Suite 200
Lansing, MI  48906
edonahue@whiteschneider.com
517/349-7744
_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

      NOW COMES Plaintiff, Rebecca Attila-Fried, by and through her attorneys, White Schneider, P.C., and for her Complaint against Defendants Kalamazoo Public Schools and Kalamazoo Public Schools Board of Education, states as follows:

### PARTIES, JURISDICTION, AND VENUE

      1.    Plaintiff Rebecca Atilla-Fried (hereinafter "Ms. Attila-Fried) is an individual residing in Decatur, Michigan, Van Buren County.  She was employed by Defendant District for approximately 16 years as a teacher.

2. Defendant Kalamazoo Public Schools (hereinafter "District") is a school district authorized and established pursuant to the Revised School Code, Mich. Comp. Laws § 380.1, *et seq*.

3. Defendant Kalamazoo Public Schools Board of Education (hereinafter "Board") is the duly elected and qualified public body authorized by the Revised School Code, Mich. Comp. Laws § 380.1, *et seq*, to operate and conduct business on behalf of the District.

4. Defendants have their place of business and exercise their authority in Kalamazoo County, Michigan.

5. This action arises under Title I of the Americans with Disabilities Act of 1990 ("ADA"), as codified, 42 U.S.C. §§ 12112-12117.

6. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1367, 42 U.S.C. §2000e-5(f), and a right-to-sue letter issued by the Equal Employment Opportunity Commission ("EEOC") (Exhibit 1).

7. Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981a.

8. Costs and attorney fees are requested pursuant to 42 U.S.C. § 2000e-5(k) and Fed. R. Civ. P. 54.

9. This action properly lies in the Western District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b), because the claim arose in this judicial district, because all parties are residents of this judicial district, and because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

**FACTS**

10. Plaintiff incorporates all foregoing paragraphs as if fully stated herein.

11. Ms. Attila-Fried is a 47-year-old woman.

12. Ms. Attila-Fried was hired by the Board in 2006 as a teacher.

13. Ms. Attila-Fried is currently certified and qualified to teach grades 6-12 Social Studies.

14. Ms. Attila-Fried's position was part of a bargaining unit represented by the Kalamazoo Education Association, MEA/NEA ("Association").

15. The Association is a labor organization and is the exclusive and sole bargaining representative "for all certified professional personnel under contract employed full-time or on a regular basis part-time in the grades Pre K-12 . . . ." The Association and Defendant Board were, at all relevant times, parties to a collective bargaining agreement ("CBA") for the time period covering August 17, 2021 through August 16, 2023.

16. Ms. Attila-Fried is a member of the Association and therefore a third-party beneficiary of the CBA.

17. On October 20, 2021, Ms. Attila-Fried caught COVID-19 and took the mandated 10 days' leave from work to recover.

18. Following her 10 days of leave, Ms. Attila-Fried returned to work, but continued to suffer from several long-term symptoms -- including chronic fatigue, high blood pressure, shortness of breath, difficulty concentrating, headache, vertigo, and mood changes -- which were ultimately diagnosed to be "long COVID."

19. Ms. Attila-Fried continued to see her doctor regarding her continued symptoms, until her doctor warned her that due to her high blood pressure, Ms. Attila-Fried was at an increased risk of stroke and needed to request leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et seq.*

20. On or about December 17, 2021, Ms. Attila-Fried first requested FMLA leave.

21. On or about December 21, 2021, Ms. Attila-Fried was first granted FMLA leave.

22. Due to her ongoing symptoms of long COVID, Ms. Atilla-Fried qualifies for protection under the ADA.

23. On March 1, 2022, the District's Compliance Specialist, Daniel Emmons, contacted Ms. Atilla-Fried, letting her know that her FMLA leave was expiring, and requesting a response by March 15, 2022.

24. On March 9, 2022, Ms. Atilla-Fried responded, requesting several accommodations, including a reduced in-person teaching schedule and the addition of remote work.

25. On March 10, 2022, Mr. Emmons informed Ms. Atilla-Fried that the District was denying the accommodation request in its entirety. The District did not propose any accommodations with which it would comply.

26. On March 30, 2022, after consultation with her healthcare provider, Ms. Attila-Fried again requested reasonable accommodations under the ADA. The accommodations requested at this time were as follows:

- Excuse her from meetings and professional development except those required by law; and of those required by law, be required to attend no more than one meeting in a 10 school day period.

- Excuse her from extra duties, including double duties -- i.e., subbing.

- Allow her one 15-minute break in the morning and one 15-minute break in the afternoon at the same time.

- Allow her extra FMLA days as needed.

- Grant flexibility on deadlines, teaching practices, techniques.

27. On March 31, 2022, Mr. Emmons informed Ms. Attila-Fried that the District was again denying Ms. Attila-Fried's reasonable accommodation request in its entirety. Instead of engaging in a meaningful communication about accommodations, Mr. Emmons stated, "Unfortunately, again the accommodations requested would impact on the essential job functions of your position such that we cannot approve this request."

28. That same day, Ms. Attila-Fried responded to Mr. Emmons, asking how the accommodations would impact her essential job functions. Ms. Attila-Fried's Association representative became involved in the email conversation, and Mr. Emmons stated the District's position as follows:

1. After an extensive search of ADA opinions, I have found nothing that identifies 'long COVID' as a disability.

2. The specific accommodated tasks are essential functions of her position.

3. Rebecca has breaks in her schedule already, so requesting another set of 15 minute breaks is disruptive to a classroom setting.

4. What is a student with a required meeting schedule supposed to do? Wait out of class 10 days until it fits into some unknown schedule?

5

    5.      The FMLA is a federal law.  It provides what it provides, nothing more or less and by contact [sic] the [union] has agreed to be bound by those provisions.

    6.      Flexibility in deadlines/teaching practices/techniques doesn't even identify an accommodation.

    7.      There is no medical documentation of necessity for these accommodations.  This is nothing more than Rebecca telling a nurse practitioner what wants [sic] and that being parroted into a report.  I hope that helps your understanding of the district's position.

29.    Again, the District refused to engage in a meaningful conversation about possible accommodations, and instead simply asserted that the requested accommodations would impact essential functions of the job.

30.    Additionally, the District accused Ms. Attila-Fried of essentially falsifying her request, asserting that it is just a "parrot[ing]" of "what she wants."  In another email that day, Mr. Emmons threatened the medical provider, stating that "The district's attorney will be sending correspondence to the medical ethics board regarding what has occurred."

31.    On April 1, 2022, Ms. Attila-Fried filed an Equal Employment Opportunity Commission complaint regarding the District's denial of her requested ADA accommodations.

32.    On April 7, 2022, Ms. Attila-Fried re-sent the documentation requesting the reasonable accommodations and "once again request[ed] a meeting to collaborate on appropriate accommodations that will allow me to return to the classroom."

33.    On April 11, 2022, Mr. Emmons responded, ignoring the request for a collaborative meeting and denying the accommodations.  Instead, the FMLA leave was extended, and Mr. Emmons stated, "As of [the expiration of the FMLA extension],

hopefully you will be able to produce a medical fitness-for-duty certification allowing you to return to work without restriction."

34. Several more emails went back and forth, in which Ms. Attila-Fried and her Association representative attempted to explain why she was covered by the ADA and what accommodations were needed. Mr. Emmons continued to simply deny the requests, essentially asserting that everything in her requests from a 15-minute break to being "excused from meetings and PD except those required by law" meant that she would be unable to perform her essential job functions.

35. On May 1, 2022, Ms. Attila-Fried met with Mr. Emmons and Ms. Amanda Miller (then local Association President), where they discussed an overview of Ms. Attila-Fried's health and the requested accommodations. They discussed how the accommodations would look with Ms. Attila-Fried's teaching schedule, how to limit disruptions to the learning and teaching environment with the accommodations, and why the accommodations were warranted. At the end of this meeting, Mr. Emmons told Ms. Miller that he did not see why Ms. Attila-Fried's request would be denied, as in his opinion all of the requests were reasonable and could be covered. Mr. Emmons also stated that while he believed that Ms. Attila-Fried's request was reasonable and manageable, he did not have the final say in whether it was approved, as that was decided by either the District's Assistant Superintendent for Human Resources, Sheila Dorsey-Smith, or the District's attorney.

36. On May 2, 2022, Mr. Emmons stated, "After much discussion, I have only been able to obtain agreement for accommodation for 5, as we discussed, and 6. . . ." These were the requests for intermittent FMLA leave and flexibility on deadlines, teaching

7

practices, and techniques. The District continued to assert that the others were essential job functions.

37. On June 9, 2022, Ms. Attila-Fried received an email of the master schedule for the new school year, beginning in September 2022. Ms. Attila-Fried was not on the schedule; rather, Ms. Attila-Fried's position appeared to be covered by another teacher.

38. Ms. Attila-Fried contacted the District's Human Resources Personnel Officer, Steve Leland, about being displaced on the schedule. Mr. Leland responded that Ms. Attila-Fried's placement with the District would be discussed when she returned to work, stating further that "We do not discuss placement with individuals on medical leave."

39. On June 30, 2022, Ms. Attila-Fried resigned from the District because she would not be able to perform the essential functions of her position without the reasonable accommodations she had requested.

40. Subsequent to her constructive discharge by Defendants, Ms. Attila-Fried accepted a lower-paying position with Coloma Community Schools teaching 6th and 7th grade Social Studies. Her current school district has granted her all of the reasonable accommodations she had been requesting from Defendants since March 30, 2022. Her essential job functions have not been impacted.

41. On May 16, 2023, the EEOC issued Ms. Attila-Fried a Right to Sue letter. (Exhibit 1.)

## COUNT I – VIOLATIONS OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT: DISCRIMINATORY TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

42. Plaintiff incorporates all foregoing paragraphs as if fully stated herein.

43. Title I of the ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms or privileges of employment." 42 U.S.C. § 12112(a).

44. Ms. Attila-Fried is a qualified individual with a disability.

45. Defendants violated the prohibition in Title I by:

   (a) failing to accommodate Ms. Attila-Fried's requests for reasonable accommodation;

   (b) failing to engage in a meaningful dialog about why reasonable accommodations were being denied; and

   (c) denying Ms. Attila-Fried the right to return to her position until she could return without restrictions.

46. Defendants' conduct adversely affected Ms. Attila-Fried's opportunities and status because she was deprived of equal access to compensation and benefits.

47. Because Defendants acted with malice or reckless indifference toward Ms. Attila-Fried's rights under the ADA, they are also liable for punitive damages. Finally, Defendants are liable for court costs, reasonable attorney fees, and expenses Plaintiff has incurred, and will continue to incur, in the prosecution of this matter.

## **COUNT II - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT: FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS**

48. Plaintiff incorporates all foregoing paragraphs as if fully stated herein.

49. Title I of the ADA makes it unlawful for an employer to fail to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity," 42 U.S.C. § 12112(b)(5)(A).

50. Ms. Attila-Fried is a person with a disability within the meaning of the ADA as an individual with a physical impairment that substantially limits one or more of her major life activities; or as a person with record of such an impairment; or as a person who is regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C).

51. Ms. Attila-Fried has been diagnosed with long COVID, and the complications associated with this diagnosis substantially limit major life activities, including chronic fatigue, difficulty breathing, and trouble concentrating.

52. Ms. Attila-Fried is otherwise qualified for the position with or without reasonable accommodation, as she is able to perform the essential functions of her teaching position.

53. Defendants were aware of Ms. Attila-Fried's disability, as she relied on such disability to obtain FMLA leave and in requesting reasonable accommodations from Defendants.

54. Ms. Attila-Fried requested reasonable accommodations from Defendants.

55. Defendants directly and/or through their agents and employees have discriminated against Ms. Attila-Fried by:

(a) failing to perform an individualized assessment on Ms. Attila-Fried for all of the essential functions of her position;

(b) failing to provide Ms. Attila-Fried with necessary and reasonable accommodations on tasks that make up the essential functions of her position that she is otherwise qualified to perform but has been categorically prohibited from performing (e.g., failure to provide reasonable breaks to take medication), even though Plaintiff's requests would not pose an undue hardship on Defendants; and

(c) failing to engage in a meaningful dialog about why reasonable accommodations were being denied, and further failing to articulate any undue hardship.

56. Defendants' conduct adversely affected Ms. Attila-Fried's opportunities and status because she was deprived of equal access to compensation and benefits.

57. Ms. Attila-Fried is entitled to immediate reinstatement of her prior position with full back pay and benefits, to otherwise be made whole for any losses sustained, and to have her reasonable accommodations request granted.

58. Ms. Attila-Fried is entitled to compensatory and punitive damages for the Defendants' malicious and/or reckless disregard for their discriminatory employment practices.

59. Further, Defendants are liable for the court costs, reasonable attorney fees, and expenses Plaintiff has incurred in the prosecution of this matter.

## **COUNT III – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT: RETALIATION**

60. Plaintiff incorporates all foregoing paragraphs as if fully stated herein.

61. The ADA provides in relevant part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, or participated in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

62. Ms. Attila-Fried engaged in protected activity under the ADA by engaging in an interactive process with Defendants by exchanging emails with Mr. Emmons advocating for Ms. Attila-Fried's requested accommodations.

63. Defendants, through their employee Mr. Emmons, were aware of the protected activity engaged in by Ms. Attila-Fried.

64. Defendants took adverse action against Ms. Attila-Fried by not including her on the master schedule for the 2022-2023 school year.

65. There is a causal connection between the protected activity engaged in by Ms. Attila-Fried and the adverse action taken against her because her exclusion from the 2022-2023 master schedule was a result of Ms. Attila-Fried being denied the opportunity to return to work until she could do so "without restriction."

WHEREFORE, Plaintiff respectfully requests that this Court:

      A.     Declare that the Defendants have violated the Americans with Disabilities Act, 42 U.S.C. § 12112, by unjustifiably limiting Plaintiff based on her disability in a way that adversely affected her job status and overall opportunities for employment;

      B.     Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12112, by denying Plaintiff's requests for reasonable accommodations;

      C.     Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12112, by retaliating against Plaintiff for engaging in protected activity under the ADA;

      D.     Immediately reinstate Plaintiff to her prior position with full back pay and benefits and otherwise make her whole for any losses sustained;

      E.     Award Plaintiff compensatory and punitive damages permitted under the ADA;

      F.     Award Plaintiff the reasonable attorney fees and costs incurred in prosecuting this action pursuant to 42 U.S.C. § 1211 and 42 U.S.C. § 2000e-5(k).

      G.     Grant Plaintiff such other and further relief as the Court may deem just and equitable under the circumstances.

      Respectfully submitted,

Dated: August 9, 2023              /s/ *Erin Hopper Donahue*
                                     Erin Hopper Donahue (P74336)
                                     White Schneider, PC
                                     Attorneys for Plaintiff
                                     1223 Turner Street, Suite 200
                                     Lansing, MI  48906
                                     Telephone: (517) 349-7744
                                     E-mail: edonahue@whiteschneider.com

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury as to all issues triable as a matter of right.

Respectfully submitted,

Dated: August 9, 2023            /s/ *Erin Hopper Donahue*
Erin Hopper Donahue (P74336)
White Schneider PC
Attorneys for Plaintiff
1223 Turner Street, Suite 200
Lansing, MI 48906
Telephone: (517) 349-7744
E-mail: edonahue@whiteschneider.com